NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**WILLIAM M. McLAREN, OSB #143836**
William.McLaren@usdoj.gov
Assistant United States Attorney
**MICHAEL A. NEWMAN**
Law Clerk
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone: (541) 465-6771
Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA | 6:21-cr-00136-AA |
| v. | **UNITED STATES' SENTENCING MEMORANDUM** |
| **DEVEN RICHARD DEARING,** | |
| Defendant. | Sentencing: January 5, 2023, at 9:00 a.m. |

In August 2020, defendant Deven Dearing drove more than six hundred miles to pick up a minor in Oregon. He first sexually abused her in an Oregon hotel room and then took her back to California, where the abuse continued for the following week. In the months leading up to that drive, Mr. Dearing used social media to chat with, charm, and repeatedly ask the minor ("MV1") to make child pornography videos and photographs of herself and send them to him.

Despite Mr. Dearing's later claims to law enforcement that he was saving MV1 from a difficult home life, his chats and repeated sexual abuse of MV1 make his motivations clear. As he drove north, he sent message after message about his plans to sexually abuse MV1 and the

"rules" she had to follow or face sexual punishment. In the hours after he picked up MV1, he removed her phone's SIM card and took her to a hotel room in Oregon to have sex before finishing the drive south, back to California.

To hold Mr. Dearing accountable, to protect MV1 and other minors from subsequent abuse, and to deter predation of society's most vulnerable members, the government and defense jointly recommend 184 months' imprisonment, and the government recommends that be followed by at least a ten-year term of supervised release.

## FACTUAL BACKGROUND[1]

### A.   MV1's Disappearance

In August 2020, MV1 was declared missing from her family home in Oregon. PSR ¶ 20. In response to this report of a missing child, multiple law enforcement agencies coordinated to locate MV1. During the investigation, law enforcement identified social media exchanges between MV1 and Mr. Dearing, who was determined to be in central California, near Sacramento. On August 29, 2020, FBI agents contacted Mr. Dearing and interviewed him about his online exchanges with MV1 and the possibility of her being in California. *Id.* On the same day, unrelated to law enforcement's contact with Mr. Dearing, MV1 walked into a police station in Merced, California. MV1 initially told police she had run away from home, hitchhiked to California, and slept on park benches. PSR ¶ 29. This story of MV1's disappearance was a lie Mr. Dearing instructed MV1 to tell police to conceal the prior week's events and his role in taking her from Oregon. *Id.*

---

[1] The facts are accurately set forth in paragraphs 20-40 of the presentence investigation report ("PSR"). To promote MV1's anonymity, certain details of the offense—such as MV1's home city—have been omitted from this public filing.

**United States' Sentencing Memorandum**                                                          **Page 2**

On September 1, 2020, MV1 was interviewed again in the context of a child forensic interview. PSR ¶ 29. During this second interview, MV1 described the evolving social media exchanges that Mr. Dearing used to groom MV1 and the eventual plan for her to run away with Mr. Dearing. PSR ¶ 30. MV1 also detailed the nine days she spent with Mr. Dearing, including multiple episodes of sexual abuse MV1 suffered at his hands. PSR ¶ 31–32.

B.      Social Media Exchanges

Following MV1's safe return to Oregon, FBI's investigation revealed MV1 met Mr. Dearing in June 2020, when she was in her mid-teens, through a chat website, Omegle, and then chatted via Instagram, a popular photo and video-sharing social network. PSR ¶ 24, 28, 30. The chats show that Mr. Dearing, who was twenty-three at the time, knew MV1 was a minor—she stated that she was younger than sixteen when they met. PSR ¶ 25, 30. In the months after they met online, Mr. Dearing engaged in extensive sexually explicit chats with MV1. PSR ¶ 35. Despite knowing her age, Mr. Dearing solicited sexually explicit photos and videos from MV1. PSR ¶ 30. MV1 stated they exchanged numerous nude photos and masturbation videos. *Id.* Mr. Dearing also created a disturbing "game" of truth or dare, which included a rule requiring MV1 to record herself masturbating and share them with Mr. Dearing. PSR ¶ 36. During their messaging, Mr. Dearing repeatedly told MV1 that he intended to impregnate her. *Id.* Later, in a voice message, Mr. Dearing threatened to impregnate MV1 and that, if she did "something stupid," he would "put that [child] up for adoption and I get you pregnant again." PSR ¶ 38. The chats, photos, and videos exchanged reflected increasing sexual exchanges and exertions of control over MV1.

/ / /

/ / /

### C. Dearing's Chats About Other Minors and MV1 with Another Predator

Before and during the period that Mr. Dearing was messaging with MV1, he periodically exchanged chats with another person online (referred to herein as Sexual Predator 2 or "SP2").[2] PSR ¶ 34. Mr. Dearing and SP2 exchanged chats about finding "getting" multiple minor females. *Id.* They discussed the minors' sexual interests, statements over chat, and physical location. In June 2020—the same month Mr. Dearing met MV1 online—he mentioned a girl potentially interested in running away from home. Relevant excerpts from the ensuing conversation follow:

> SP2: Where is she from?
> Defendant: Organ I believe.
> Defendant: You interested?
> Defendant: Oregon *
> Defendant: [Provides MV1's street name and city]
> Defendant: Need you to be on top of responding if you are.
> Defendant: [Sends one nude and one partially nude photograph of MV1]
> . . .
> Defendant: I can get her if you can keep her
> . . .

PSR ¶ 35. Mr. Dearing's chat conversations with SP2 faded after SP2's subsequent response that he "can't house her" and his non-response when Mr. Dearing asked him whether he knows anyone who can.

### D. Dearing Takes MV1 from Oregon to California

In the months after they met, Mr. Dearing made plans to help MV1 'run away' with Mr. Dearing. PSR ¶ 30. On August 20, 2020, Mr. Dearing drove from his house in central California, to MV1's home in Oregon—over six hundred miles away. PSR ¶ 25. On his drive

---

[2] SP2 used a fake name and credentials for the online account he used to chat with Mr. Dearing and he was unable to be identified by law enforcement. Beyond the chat conversation about MV1 described below, the investigation did not reveal evidence of SP2's involvement with the offense conduct in this case.

**United States' Sentencing Memorandum**                                                                 **Page 4**

north to pick MV1 up in Oregon, he sent many sexually explicit messages using the voice chat feature of his phone. PSR ¶ 37. Some of these messages threatened MV1 with punishment if she didn't remember the "rules." PSR ¶ 38. Below are a selection of voice messages all from Mr. Dearing:

> (1) 10:53am: It was, if you didn't blow me within a reasonable amount of time after waking up, I was gonna facefuck you.
> (2) 10:54am: You'll have warning, it won't just be out of nowhere kind of thing.
> (3) 10:55am: Where should I cum then?
> (4) 10:57am: So not the, hold your head down until I stop kinda thing that you said before?
> (5) 11:22am: I mean, you're still getting a punishment when you get there, you do realize that right?
> (6) 11:36am: It's going to be a little hard getting in trouble if you can't remember the rules, hope you realize that.
> (7) 11:54am: True, it would definitely give you a reason to take care of yourself. The other option is get you pregnant and if you do something stupid then we put that one up for adoption and I get you pregnant again.
> (8) 3:13pm: And I won't let you kiss me, you'll have to do something else.

PSR ¶ 38.

Also, while en route to Oregon, Mr. Dearing made plans to disable the SIM card in MV1's phone in order to prevent her from being found. PSR ¶ 39. Mr. Dearing planned to purchase a SIM card removal tool and gave MV1 instructions on when she should place her phone into airplane mode. *Id.*

After Mr. Dearing picked up MV1 and removed her SIM card, they stayed at a hotel in Oregon and Mr. Dearing sexually abused MV1. PSR ¶ 31. MV1 later shared that, after arriving at Mr. Dearing's house in California, and over the course of the subsequent week, he continuously sexually abused MV1 in a variety of ways. *Id.* A later police search of Mr. Dearing's home discovered, among other things, various sexual items more fully described in PSR ¶ 27.

After staying with Mr. Dearing for over a week, MV1 began to suffer mentally and wished to return home. The two agreed he would drop her off at the sheriff's office, where she would lie about having run away from home and not involve Mr. Dearing. PSR ¶ 29, 32.

## THE CHARGES & GUIDELINE COMPUTATIONS

Mr. Dearing pleaded guilty to Counts One and Two of the indictment in this matter: (1) Sexual Exploitation of a Child, in violation 18 U.S.C. § 2251(a) and (e), and (2) Transportation with Intent to Engage in Criminal Sexual Activity, in violation of 18 U.S.C. § 2423(a). At sentencing, the government will move to dismiss Count Three (receipt of child pornography).

Count One of the indictment carries a mandatory minimum sentence of 15 years' imprisonment and up to 30 years' imprisonment and a $250,000 fine. Count Two of the indictment carries a mandatory minimum sentence of 10 years' imprisonment and up to life imprisonment and a $250,000 fine.

The government recommends the following guidelines:

| Guidelines | Amount |
|---|---|
| Base Offense Level [USSG § 2G2.1] | 32 |
| Commission of sexual act [§ 2G2.1(b)(2)(A)] | +2 |
| Use of computer [§ 2G2.1(b)(6)(B)(ii)] | +2 |
| Repeat and dangerous sex offender [§ 4B1.5(b)(1)] | +5 |
| Combined offense level [§ 3D1.4(a)] | +2[3] |
| Acceptance of responsibility [§ 3E1.1(a) and (b)] | -3 |
| **Government's Recommended Total Offense Level** | **40** |

---

[3] Paragraph 7 of the parties' plea agreement calculates an adjusted offense level of 40 by including a +2 increase under USSG § 3D1.4(a) to account for the combined offense level. The PSR writer calculated the adjusted offense level as 38 and grouped both counts under USSG § 3D1.2. The parties' agreement calls for a five-level downward variance, which encompasses the three-level variance that would be required under a Total Offense Level of 38 to reach the jointly-recommended sentence. Therefore, for practical purposes, the government respectfully requests the Court acknowledge this difference in guidelines calculation and order a downward variance necessary to achieve the parties' recommended sentence, whether that be three or five levels.

**United States' Sentencing Memorandum**                                                                 **Page 6**

Taken with a Criminal History Category of I, that Total Offense Level results in an advisory guideline range of 292-365 months' imprisonment. Based on the parties' negotiations, and considering the factors set forth in 18 U.S.C. § 3553(a), the parties jointly recommend a sentence of 184 months' imprisonment. This would require a 5-level downward variance from the recommended offense level, resulting in a guideline range of 168-210 months.

In addition to the federal charges above, Mr. Dearing also has pending cases in state jurisdictions in California and Oregon that are related to the instant offense. Following the federal sentencing in this case, the Mariposa County District Attorney's Office has agreed to recommend a sentence not to exceed 52 months in its case and the Benton County District Attorney's Office has agreed to recommend a sentence not to exceed 156 months in its case, both to run concurrently to one another and the federal sentence. This global agreement has been carefully crafted by all involved parties.

**ARGUMENT**

Mr. Dearing, though young and a first-time offender, displayed the most troubling aspects of a sexual predator in the events described above. He targeted a vulnerable minor. He used social media to charm his victim and offer her security, knowing her insecurity was at its apex. He threatened MV1 with punishment for not following his "rules." The investigation revealed, and the evidence amply shows, that Mr. Dearing viewed MV1 as an object for his sexual gratification, whose difficulties and vulnerability fit well into his scheme to find and "get" minor girls.

Mr. Dearing collaborated with another apparent sexual predator for what can only be described as hunting, discussing multiple girls as young as 12 from various states. When he 'found' MV1, he shared nude photographs and her location. He attempted to enlist that predator

to store MV1 like one would store a car—"I can get her if you can keep her." The context of his messages make it clear that Mr. Dearing intended for that man to share in, or at least aid, his abuse of MV1.

Mr. Dearing not only requested child pornography and engaged in chats about sexual fantasies, he acted on them. He drove nearly an entire day, took MV1 from her home in Oregon to another state and repeatedly sexually abused. He eventually released MV1 to authorities after the events' darkness began affecting her mental state. But, even in this act, Mr. Dearing was self-serving. He is a trained, certified emergency medical technician and, as such, must have known MV1's extreme risk for potentially acting on the increasingly dark thoughts she suffered while in California. Rather than protecting her by taking her to a hospital, or contacting authorities or MV1's parents to explain what had happened and enlist their help in potentially setting things right, he left her at a California sheriff's office with instructions to lie in order to cover up his crimes. Mr. Dearing engaged in months of chatting and days of driving to set these events in motion, but could not be bothered to do anything more than drop off a minor, alone, at a nearby building when he was done with her. These actions speak for themselves.

The jointly recommended sentence of 184 months will protect MV1 and other young girls from Mr. Dearing's predation while sparing MV1 from having to relive this trauma by testifying at trial. Furthermore, a sentence of 184 months reflects the seriousness of Mr. Dearing's crimes, accounts for his lack of criminal history, provides just punishment, and affords adequate deterrence to other potential sexual predators.

Finally, a sentence of 184 months will allow for a global resolution of both federal and state charges against Mr. Dearing and, hopefully, provide some semblance of peace to MV1 and her family such that they may begin to heal.

## CONCLUSION

The parties jointly recommend a sentence of 184 months' imprisonment, and the government recommends at least a ten-year term of supervised release, a $200 fee assessment, and the imposition of restitution in an amount to be determined and requested at a subsequent hearing.

Dated: December 28, 2022

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

*/s/ William M. McLaren*
WILLIAM M. McLAREN
Assistant United States Attorney

*/s/ Michael A. Newman*
MICHAEL A. NEWMAN
Law Clerk
